IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VINCENT J. TULIO** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **LANSDALE BOROUGH** | : | **NO. 22-2423** |

MEMORANDUM OPINION

**Savage, J.**                                                                                                                      **March 9, 2023**

After plaintiff Vincent Tulio refused to pay delinquent bills for water, sewer and electricity services to his commercial property, defendant Lansdale Borough disconnected the utility services and filed liens against the property. Tulio complains that he has been unable to obtain a use and occupancy permit to rent the property without utilities. He filed this action, claiming that he was denied due process in violation of the Fourteenth Amendment and his property was effectively taken in violation of the Takings Clause of the Fifth Amendment.[1]

The Borough filed a motion to dismiss the complaint. After Tulio responded, we converted the motion to one for summary judgment. The parties filed cross-motions for

---

[1] The complaint alleges:

> Tulio cannot obtain utility service as the Borough apparently has a policy in which it will not hook up a property that has outstanding liens, even if a customer has disputed those liens. Tulio has attempted to dispute the liens against his property through the legal system, yet the Borough refuses to provide any procedure for this, other than demanding Tulio pay off the liens.

Compl. ¶ 46, ECF No. 1.

"Apparently, as a result of the existence of the liens, the Borough's policy is to refuse to provide utility service connections to the property which prevents Tulio from using the property, as he cannot get tenants without utility service." *Id.* ¶ 75.

He also asserts a state law claim that the Borough has violated the terms of a 2014 Settlement Agreement regarding this property. *Id.* ¶ 73.

summary judgment, supplementing the record with exhibits, deposition transcripts and declarations.

The undisputed evidence shows that Tulio did not pay his utility bills. As a result, the Borough disconnected the utilities and filed liens against the property. Tulio then initiated a challenge to the liens under the Municipal Claims and Tax Liens Act ("MCTLA"), 53 Pa. Con. Stat. § 7101, *et. seq.*, in state court, but he has not pursued the process. Because the process provided by the MCTLA that Tulio invoked and is ongoing satisfies due process requirements, there is no Fourteenth Amendment violation. Nor do the facts establish a regulatory taking of his property constituting a Fifth Amendment violation. Therefore, the Borough is entitled to judgment in its favor.

## Background

Tulio's battle with the Borough over charges for water, sewer and electricity service supplied by the Borough[2] began fourteen years ago.[3] Rather than paying what he insisted was due, he paid nothing.[4] After he stopped paying his water, sewer and electric bills, the

---

[2] The Borough supplies electricity, water, and sewer services to Borough properties. The North Penn Water Authority ("NPWA") reads the meters and calculates the water bill. *See* Dep. of John Ernst at 73:18-74:10 ["Ernst Dep."] Nov. 15, 2022, ECF No. 22-4 (attached as Ex. S to Def.'s Mot. for Summ. J. ["DMSJ"], ECF No. 22); *see also* Resolution No. 2014-27 Establishing Sewer Rates, Nov. 19, 2014, ["Borough Sewer Rates"], ECF 23-12 (attached as Ex. K to Pl.'s Mot. for Summ. J. ["PMSJ"], ECF No. 23); Resolution No. 2014-27 Establishing Sewer Rates, Nov. 19, 2014, ["Borough Sewer Rates"], ECF 22-4 (attached as Ex. R to DMSJ).

From 2017 to 2022, NPWA contracted to do the Borough's water billing. *See* Ernst Dep. at 73:18-74:1.

[3] The first lien imposed on the property was for unpaid sewer bills on October 7, 2008. *See* Tulio Affidavit of Defense re 406 Pierce Street, Montgomery County Court of Common Pleas at ¶¶ 5-6 ["Tulio Affidavit of Defense"], Mar 18, 2021, ECF No. 26 (attached as Ex. Z to Def.'s Reply Br. in Supp. DMSJ. ["DRSMSJ"], ECF No. 26).

[4] Dep. of Vincent Tulio 97:13-17; 112:12-24 ["Tulio Dep."] Nov. 17, 2022, ECF No. 20-1 (attached as Ex. D to Def.'s Suppl. Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ["DMSMTD"], ECF No. 20).

Borough filed liens against his property in Montgomery County pursuant to the MCTLA.[5] On October 7, 2008, it filed a lien for unpaid sewer bills.[6] On April 8, 2011, October 23, 2012, April 23, 2013, and January 15, 2015, it filed additional liens for unpaid sewer bills.[7] It also filed seven liens for unpaid electric bills.[8]

Starting on March 22, 2011, the Borough disconnected electric service to individual units, leaving the one used by Tulio himself with electric service.[9] The Borough continues to bill Tulio monthly minimum electric service fees as prescribed by the Borough Code.[10] On December 20, 2011, the Borough disconnected water service.[11] In February 2015, it denied Tulio a use and occupancy permit because there were outstanding utility bills on the property.[12]

To challenge the liens, Tulio initiated the procedure provided under the MCTLA. On February 16, 2021, ten years after water service had been disconnected and twelve years after the first lien was recorded, he filed notices to issue writs of *scire facias* in the

---

[5] Copies of Municipal Liens, Oct. 6, 2008, Apr. 7, 2011, ECF No. 23-7 (attached as Ex. F to PMSJ).

[6] *Id*.

[7] *See* Vincent Tulio Docket Sheet Court of Common Pleas of Montgomery County, Pennsylvania ["Tulio Docket Sheets"]. We take judicial notice of the Montgomery County Court of Common Pleas docket. These proceedings are referenced and relied upon in the plaintiff's Complaint and cross motions for summary judgment. Compl. ¶¶ 16, 17, 39, 40; DMSJ at "Introduction and Procedural History"; PMSJ at 3.

[8] Tulio Docket Sheets.

[9] PMSJ at 3.

[10] Lansdale Electric Service Disconnection Notice of Monthly Customer charges ["Electric Monthly Charges Notice"] July 27, 2016, ECF No. 22-4 (attached as Ex. V to DMSJ); Resolution No. 2014-26 Establishing Electric Rates, Nov. 19, 2014, ["Borough Electric Rates"], ECF 22-4 (attached as Ex. U to DMSJ); Resolution No. 2014-26 Establishing Electric Rates, Nov. 19, 2014, ["Borough Electric Rates"], ECF 23-12 (attached as Ex. J to PMSJ).

[11] Tulio Affidavit of Defense ¶ 9.

[12] PMSJ at 3; *see also* Zoning Letter/Use and Occupancy Permit Denial ["Permit Denial Utility Bills"] Feb. 6, 2015, ECF No. 23-6 (attached as Ex. E to PMSJ).

3

Montgomery County Court of Common Pleas.[13] After the Borough filed timely responses, he filed affidavits of defense.[14] On April 5, 2022, Tulio's counsel emailed the Montgomery County Court of Common Pleas requesting that the court list only lien Docket No. 2011-10010 as ready for trial.[15] On May 26, 2022, the Borough withdrew that lien.[16] After the Borough withdrew the lien, Tulio applied for electricity service to that unit.[17] The Borough denied his application because an amended lien had been filed.[18] Although he had filed affidavits of defense for all liens, he did not move for trial on the remaining liens.[19] Nor has he moved since.

In the meantime, due to the delinquent utility bills, Tulio has been unable to obtain a use and occupancy permit, preventing him from renting the property.[20] He claims he lost over a million dollars in rental income.[21]

Tulio and the Borough were also engaged in an unrelated land use dispute. The Borough issued summary citations for failure to complete improvements to use the

---

[13] *See* Tulio Docket Sheets; *see also* Docket Sheet Case #2011-10009 Municipal Lien 400 Pierce Street ["Municipal Liens Docket Sheet"], Apr. 08, 2011 - Feb. 16, 2021, ECF No. 24 (attached as Ex. W to Def.'s Resp. to Statement of Allegedly Undisputed Material Facts in Opp'n to Pl.'s Mot. for Summ. J. ["DROMSJ"], ECF No. 24); Tulio Affidavit of Defense (filed Mar. 18, 2021, regarding 406 Pierce Street lien).

[14] Tulio Docket Sheets; *see, e.g.,* Tulio Affidavit of Defense ¶ 17.

[15] Email to Judge Steven Tolliver, Montgomery County Court of Common Pleas from Andrew Knox, ["Trial Ready Email Request"], April 5, 2022, ECF 20-1 (attached as Ex. O to DMSMTD).

[16] Praecipe to Withdraw/Discontinue Municipal Lien Docket No. 2011-10010 ["Lien Withdrawal"], May 26, 2022, ECF No. 21-1 (attached as Ex. D to Pl.'s Suppl. Mem. of Law in Opp'n. to Def.'s Mot. to Dismiss/Mot. for Summ. J. ["PMOMTD"], ECF. No. 21).

[17] Tulio Affidavit Regarding Application For Electricity Service ["Tulio Affidavit Electric Service"], May 27, 2022, ECF No. 21-1 (attached as Ex. E to PMOMTD).

[18] *Id.*

[19] Tulio Dep. 77:6-9; *see also* Tulio Docket Sheets.

[20] Permit Denial Utility Bills; Tulio Dep. 69: 1-5.

[21] Compl., 13 at "Wherefore" clause ¶ iii.

building as a storage facility.[22] The summary citations had nothing to do with utility services.[23] The parties entered into a Settlement Agreement on December 18, 2013 to resolve disputes related to Tulio's use and development of his building.[24] In his breach of contract claim, Tulio argues that the Borough waived and released all claims and debts, including utility debts in that agreement.[25]

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg*, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003) (citation omitted). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 135 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

---

[22] Settlement Agreement and Mutual Release ["Settlement Agreement"] Dec. 18, 2013 ¶¶ C, G, ECF No. 23-3 (attached as Ex. B to PMSJ).

[23] *See generally id.*

[24] *Id.* ¶ B.

[25] Compl. ¶ 71.

Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Gillispie v. RegionalCare Hosp. Partners Inc,* 892 F.3d 585, 592 (3d Cir. 2018) (citation and internal quotation omitted).

## Analysis

The material facts are not in dispute. Tulio has not paid his utility bills. Because he refuses to pay the bills, utility services have been turned off and he cannot obtain a use and occupancy permit.[26] He and his attorneys engaged in multiple attempts to have the Borough adjust the bills. He concedes that he did not complete the process for challenging the liens in the state court—a process he initiated and acknowledges remains available under the MCTLA.[27]

*Fourteenth Amendment: Procedural Due Process*

Tulio claims that the Borough deprived him of his property without affording him due process. He does not deny that his challenges to the liens under the MCTLA are pending.[28] He contends the Borough thwarted the process by withdrawing and amending the one lien that he had moved to trial, preventing a judicial resolution.[29]

To determine whether an individual has received due process, we "examine[] the procedural safeguards built into the statutory…procedure…effecting the deprivation, and any remedies for erroneous deprivations provided by statute." *In re Energy Future*

---

[26] PMSJ at 3, 9; Permit Denial Utility Bills.

[27] Tulio Dep. at 78: 1-11.

[28] PMSJ at 10.

[29] *Id.* at 10.

*Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir. 2010). We ask whether the government has met the "core of due process"— "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Frein v. Pa. State Police*, 47 F.4th 247, 257 (3d Cir. 2022) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).

Ordinarily, the state must provide a hearing or other opportunity to be heard before depriving a person of his property. *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). For example, pre-deprivation process must be afforded to residential customers facing termination of services for unpaid utility bills. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 22 (1978). Notice must provide the residential customer with the availability of an administrative procedure to consider the customer's complaint of erroneous billing, and the opportunity to present the complaint to a designated employee empowered to review disputed bills and rectify errors. *Id.* An informal administrative process may be enough to constitute due process. *Id.*

The Borough provides pre-deprivation process before disconnecting utility services to residential customers.[30] Although Tulio was a commercial,[31] not a residential customer, the Borough afforded him an administrative process before it terminated his utility service. He and his attorney engaged in many conversations, through written and

---

[30] The Pennsylvania Public Utility Commission does not regulate the Borough's management of utility services within the Borough's boundaries. Under the Pennsylvania Borough Code, the Borough is authorized to regulate the use of and the charge for electricity it furnishes, as well as to collect water rents, and establish rates and conditions for water service provision. 8 Pa. Cons. Stat. §§ 24A03; 2454. By ordinance, it may require owners to make connections with the sewer system and set monthly, quarterly or annual sewer rental rates. *Id.* § 2051.

[31] The Borough is authorized to disconnect commercial users from electricity service for nonpayment with at least 48 hours' notice. Lansdale Borough Code § 185-19(B).

in-person correspondence, over 12 years to resolve the sewer billing.[32] He had so many meetings, Tulio could not count them all.[33] The Borough ultimately reduced the number of billable units and credited Tulio's account.[34] Still dissatisfied, Tulio stopped paying not only for water and sewer service,[35] but also for electric service.[36] He knew the Borough could shut off service for non-payment.[37] The Borough staff warned him repeatedly that his service would be terminated unless he paid the outstanding balances.[38] Despite the warnings, he refused to pay.

Tulio also had a formal avenue to dispute his sewage use allocation when he received the notice of discharge allotment. After receiving the Borough's sewer usage modification notice, he had 30 days to appeal to the Borough Superintendent. Lansdale Borough Code § 323-31. A decision denying modification of a sewer use permit is a final administrative decision subject to judicial review in the Montgomery County Court of Common Pleas. *Id.* § 323-31(D)-(E). Tulio did not seek judicial review.

Tulio had the opportunity to present his complaint that he was improperly charged to Borough employees. He took that opportunity. As he acknowledged, he and his attorney had many meetings with Borough representatives over the years to resolve the billing dispute. That he did not get what he wanted does not mean he was not heard.

---

[32] Tulio Dep. 11:20-24, 30:16-23, 32:8-20, 98:10-14.

[33] *Id.* 30:16-23.

[34] *Id.* 29:7-22.

[35] The Borough may disconnect water service for failure to pay sewer bills. 53 Pa. Cons. Stat. § 3102.502(a)(1). It sends notice of intent to disconnect to customers with accounts that are 30 days overdue. *Id.* § 3102.502(b). It warns that service will be disconnected within ten days after service of the notice. *Id.*

[36] Tulio Dep. 97:15-23.

[37] *Id.* 33:20-34:5; 68:12-16; 85:3-13.

[38] *Id.* 34:1-6; 85:3-16.

Thus, we hold that Tulio was afforded notice and an opportunity to contest the utility bills before the services were disconnected.

Even if Tulio had not been afforded pre-deprivation process, he had an available post-deprivation process. The MCTLA provided a procedure that satisfies due process. It provided him an opportunity to contest the utility charges and obtain a judicial determination of his liability for them.

In *Augustin v. City of Philadelphia*, the Third Circuit found that a pre-deprivation hearing is not required before recording a utility lien. 897 F.3d, 142, 144 (3d Cir. 2018). It reasoned that "[u]nder most circumstances, an erroneously filed lien can be fully remedied by a post-filing hearing and an order removing the encumbrance." *Id.* at 151. It held that the MCTLA provides a property owner an opportunity to be heard in a meaningful manner, satisfying due process. *Id.* at 152.

The MCTLA permits a property owner to challenge a lien in the Court of Common Pleas by filing a motion requiring the lienholder to issue a writ of *scire facias*.[39] A writ of *scire facias* is a vehicle for determining the sum due on a lien and to give the property owner an opportunity to show cause why execution should not proceed. *Shapiro v. Center Township, Butler County.,* 632 A.2d 994, 997 n.3 (Pa. Commw. Ct. 1993) (citing 53 Pa. Cons. Stat. § 7106). It serves the dual purpose of a summons and a complaint. *Id*. It gives

---

[39] There is an alternative procedure under the MCTLA. An owner need not wait until a lien is filed to resolve a disputed bill. At any time before or after the lien is filed, he may deposit the amount of the contested claim into court and the claim will be discharged and stricken pending a judicial determination. 53 Pa. Cons. Stat. § 7182 ("The same course may be pursued, at the instance of any owner, where the claim has not in fact been filed, and if, in that event, the petitioner complies with the decree made, the money paid into court or security entered shall stand in lieu of the claim and the latter shall not be filed, and if filed shall be stricken off upon motion."). The property owner files a petition setting out his defenses. *Augustin*, 897 F.3d at 145 (citing 53 Pa. Cons. Stat. § 7182). He is then entitled to a full hearing on the validity of the amount owed. *Id.* at 152. If the court finds that the amount owed is less than what has been charged, the property owner receives a refund from the money posted as security. Tulio did not take this route.

the owner the opportunity to present his defenses and demonstrate why the lien should be stricken. *Newberry Township v. Stambaugh*, 848 A.2d 173, 177 (Pa. Commw. Ct. 2004) (citations omitted).

Once a property owner files a notice to issue a writ of *scire facias*, the municipality must respond within fifteen days. 53 Pa. Cons. Stat. § 7184. The owner then files an affidavit of defense setting forth why he contends he is not liable. *Shapiro*, 632 A.2d at 997. Defenses include payment, defective claim, fraud, or lack of notice or process. *Pentlong Corp. v. GLS Cap., Inc.*, 820 A.2d 1240, 1247 (Pa. 2003) (citations omitted). The court determines the amount due, if any. 53 Pa. Cons. Stat. § 7182. If either party disagrees with the court's ruling, that party may request a jury trial. *Id.*

Tulio started the MCTLA process to challenge the validity of the liens, but never completed it.[40] He initiated the process when he filed notices to issue writs of *scire facias*.[41] After the Borough responded, he filed affidavits of defense for each lien.[42] He proceeded to litigate only one of the electric fee liens covering one unit, but did not pursue it once the Borough withdrew and then amended the lien.[43] He did not move the remaining liens for trial.

---

[40] *See* Tulio Affidavit of Defense; Tulio Docket Sheets.

At the time the Borough disconnected service and first issued liens in 2011, Tulio owed about $2,800 for water, sewer and electric service. *See* Email from John Ernst to Tulio Re: Lien Balances ["Lien Balances"], Oct. 02, 2020, ECF No. 20-1 (attached as Ex. M to DMSMTD). Now, twelve years later, he claims $1.5 million in damages. Compl. at 13 "Wherefore" clause ¶ iii.

[41] Tulio Docket Sheets.

[42] *Id; see e.g.,* Tulio Affidavit of Defense.

[43] Although he did not dispute the amount he owed in electric bills before he stopped paying them, Tulio moved an electric lien to trial. He did not move the disputed sewer liens to trial. *See* Test Case Email, ECF No. 20-1 (attached as Ex. O to DMSMTD).

That the Borough withdrew and updated one of the liens[44] did not deny Tulio due process. The Borough did not prevent him from challenging the new lien and prosecuting his challenges to the remaining liens. It reissued the withdrawn lien with updated information.[45] Tulio did not file a notice to issue a writ of *scire facias* on the amended lien.

Tulio could have moved and still can move the liens to trial. Nothing prevented him from doing so then and now. The Montgomery County Common Pleas Court does not automatically schedule a case for trial. All counsel must certify that the case is ready for trial. *See* Montgomery Cty. L.R. 212.1*(d)(1). If counsel refuses to join in a certification, counsel wishing to list the case for trial may request a conference with the designated judge. The judge rules on the readiness of the case. Montgomery Cty. L.R. 212.1*(d)(4).

At oral argument, Tulio's counsel conceded that she did not request the Borough's counsel consent to file a certificate of readiness. She assumed he would not consent. But, she did not need his consent to seek a conference with a judge to get the cases listed. She knew how to get the cases to trial. Indeed, she moved one case to trial.

A plaintiff cannot prevail on a due process claim if he has not availed himself of the available state procedural protections, unless they were "patently inadequate." *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). "When access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim*." Reilly v. City of Atlantic City*, 532 F.3d 216, 235 (3d Cir. 2008) (quoting *Alvin*, 227

---

[44] Lien Withdrawal; Amended Municipal Lien Electric Fees Unit 406 Pierce Street ["Amended Lien"], October 19, 2012, ECF No. 20-1 (attached as Ex. L to DMSMTD).

[45] Email from Counsel for Lansdale Borough to Counsel for Tulio Re: Lien Withdrawal ["Lien Withdrawal Email'], May 26, 2022, ECF No. 20-1 (attached as Ex. P DMSMTD); Tulio Affidavit Electric Service; Amended Lien.

F.3d at 118). If there is a process that meets due process requirements, "the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin*, 227 F.3d at 116 ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of the remedies."). The Borough did not prevent Tulio from pursuing the MCTLA process. Nor was the process inadequate.

It is undisputed that Tulio has not pursued the procedures available to him under the MCTLA. He cannot complain that he has been deprived of due process while the process is pending. Therefore, because Tulio was not deprived of due process, the Borough is entitled to judgment as a matter of law on the Fourteenth Amendment claim.

*Fifth Amendment: Taking Property without Just Compensation*

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property cannot be taken for public use without compensation. *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017) (citing U.S. Const. amend. V.). The Takings Clause not only applies to the government's physical appropriation of private property for public use, but also to government regulation that deprives the owner of the economically beneficial or productive use of his property. *Id.* at 1942-43 (citing *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001)). A *per se* regulatory taking occurs when a regulation renders the property "essentially idle." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)).

Tulio argues that the Borough's denial of a use and occupancy permit and its refusal to reconnect utility service constitute an improper taking because he cannot rent

12

units in his property.[46] Yet, he concedes that he has refused to pay electric bills even though he does not dispute the electric charges.[47] He admits that he stopped paying his water and sewer bills because he contends he owes less.[48] After he stopped paying, the Borough turned the services off and filed liens on the property.[49]

There has been no *per se* taking. The Borough has not physically taken Tulio's property and has not deprived him of all economically viable uses of the property. Liens do not foreclose all economically viable uses of the land. *Cowell v. Palmer Township*, 263 F.3d 286, 291 (3rd Cir. 2001).

A partial regulatory taking may occur even when the owner is not deprived of all economically beneficial use. If he asserts that he has been improperly deprived of a legally cognizable property interest by government action, he may make a claim for a partial taking. *Nekrilov*, 45 F.4th at 669 ("A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest.") (citing *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017)). A less than total deprivation limiting the property's use may amount to a compensable taking under the test established in *Penn Central Transportation Co. v. City of New York*. 438 U.S. 104, 124 (1978). The *Penn Central* factors are: (1) the economic impact of the regulation on the value of the property; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action. *Nekrilov,* 45 F.4th at 672 (quoting *Murr*, 137 S. Ct. at 1943).

---

[46] PMSJ at 14-16.

[47] Tulio Dep. 90:12-21. Recall he stopped paying for electricity because he disputed his water and sewer charges.

[48] *Id.* 97:1-17.

[49] *Id.*; Tulio Affidavit of Defense ¶ 9.

We start with the character of the government action—imposing the liens, disconnecting service, and charging fees. When considering this factor, courts determine if the government action is closer to a compensable "classic taking," i*d.* at 677 (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 237 (2005), or to "some public program adjusting the benefits and burdens of economic life to promote the common good," *id.* (citing *Penn Cent. Transp. Co.*, 428 U.S. at 124).

The Borough's enforcement of its utility code is non-compensable government action that advances the public interest. The government has a legitimate interest in collecting debts to stabilize municipal finances, and the public has a strong interest in a viable utility distribution. *See Augustin*, 897 F.3d at 152 (discussing government interest in collecting municipal lien debts and public interest in provision of gas utilities). Courts typically uphold government regulations that "appl[y] generally to a broad class of properties." *Nekrilov*, 45 F.4th at 677 (quoting *Rogin v. Bensalem Township*, 616 F.2d 680, 690 (3d Cir. 1980)). The utility rates and charges set by the Borough are universally imposed on consumers throughout the Borough. The Borough has not demanded Tulio pay charges any different than others in the Borough pay. Imposing liens is no more restrictive or burdensome to Tulio than any other property owner utilizing the Borough's water, sewer and electricity services. The Borough's termination policies do not restrict or burden Tulio any more than they do other utility users.

The government action here is akin to non-compensable government regulation that regulates economic life to promote the common good. The reason he has no utility services is not because the Borough singled him out. It treated him as it treats any other

14

property owner who refuses to pay for the services. Allowing him to avoid paying for services would shift the cost of maintaining utilities to other property owners.

In considering the economic impact factor, we must "compare the value that has been taken from the property with the value that remains in the property." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). The imposition of liens, disconnection of services and charging fees do not amount to a taking. There has been no diminution in the property's value.

Tulio claims that he has "suffered a substantial loss of income"—$120,000 annually.[50] His alleged lost profits are speculative and not an appropriate measure of economic impact for the purpose of an economic impact analysis. *See Nekrilov*, 45 F.4th at 673 (finding that plaintiff's allegation regarding loss of potential short-term rental revenue was not an appropriate measure of economic impact). He has not demonstrated that the property value drastically declined because of the liens or the absence of utilities. To the contrary, he concedes "[t]he building has substantial value. It has double the value with tenants in it, but with all the municipal liens, because nothing has been resolved, I can't borrow against the asset."[51] A regulation must drastically reduce property value to require compensation based on economic impact. *Id.* at 674 (citing *Rogin,* 616 F.2d at 692). Even though the liens would have to be satisfied at closing, he has not been prevented from selling the property for fair market value. In short, his property value has not been diminished.

---

[50] Compl. ¶¶ 50, 51, 54, 76.
[51] Tulio Dep. 105:18-22.

With respect to the interference with investment-backed expectations factor, the Borough has not interfered with those expectations. No reasonable investor would expect the Borough to provide utility services without charge. Nothing in the record suggests that the value of the property has declined because the Borough enforced its ordinances. Tulio invested in his warehouse in Lansdale Borough knowing that he would have to pay for utilities. A reasonable investor would expect that utility services would be terminated for nonpayment.

"[D]istinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest." *Id.* at 674-75 (quoting *Pace Res. Inc. v. Shrewsbury Township*, 808 F.2d 1033 (1987)). Tulio ignores the Borough's power to regulate and provide utilities in the public interest. 8 Pa. Cons. Stat. §§ 24A, 2401. When he bought the property, regulations required that he pay his bills or face a shut off. 53 Pa. Cons. Stat. § 3102.502(a)(1); Lansdale Borough Code § 185-19(B). The Pennsylvania Municipalities Planning Code permits charges, expenses and fees incurred in the collection of the delinquent account. 53 Pa. Con. Stat. § 7106(a)(1).

Even if Tulio could show a distinct, investment-backed expectation, "a taking through an exercise of the police power occurs only when the regulation 'has nearly the same effect as the complete destruction of [the property] rights' of the owner.'" *Pace Res.*, 808 F.2d at 1033 (internal citation omitted). That did not happen here.

A taking does not occur merely because a regulation denies the owner of the most profitable use of the property. It must "effectively destroy his property rights." *Id.* Tulio has failed to show that the Borough's regulation of providing utility services and enforcing payment for them effectively destroys his property rights. Government action providing

utility services for a fee and disconnecting service for failure to pay does not substantially interfere with his property rights.

Because the Borough was exercising its legitimate interest in providing and regulating utilities and because payment for utility service was reasonably expected, there was no diminished investment-backed expectation supporting a finding of a taking. Therefore, because there has been no taking, the Borough is entitled to summary judgment on Tulio's Fifth Amendment claim.

*Supplemental Jurisdiction*

Having dismissed the federal claims, we decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the state law breach of contract claim. Tulio is free to pursue his contract claim in state court.

**Conclusion**

The undisputed facts establish that Tulio was not deprived due process and there was no taking of his property. There has been no Fourteenth or Fifth Amendment violation. Therefore, we shall grant the Borough's motion for summary judgment on the federal claims and dismiss the remaining state law breach of contract claim.